# Illinois Official Reports

## Appellate Court

---

**_Erie Insurance Exchange v. Compeve Corp._, 2015 IL App (1st) 142508**

---

| | |
|---|---|
| Appellate Court Caption | ERIE INSURANCE EXCHANGE, Plaintiff-Appellee, v. COMPEVE CORPORATION and SLAVA PACKOVSKIS, Defendants-Appellants. |
| District & No. | First District, Fifth Division<br>Docket No. 1-14-2508 |
| Filed | May 8, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CH-23607; the Hon. Kathleen G. Kennedy, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | David J.E. Roe, of Mount Prospect, for appellants.<br><br>Bruce M. Lichtcsien, of Hinkhouse Williams Walsh LLP, of Chicago, for appellee. |
| Panel | JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Presiding Justice Palmer and Justice McBride concurred in the judgment and opinion. |

**OPINION**

¶ 1        Defendants, Compeve Corporation (Compeve) and Slava Packovskis, appeal from the trial court's entry of summary judgment in favor of plaintiff Erie Insurance Exchange (Erie). The trial court found that Erie had no duty to defend defendants in a lawsuit filed against them by Microsoft Corporation (Microsoft), which alleged that defendants violated Microsoft's intellectual property rights by selling computers loaded with unauthorized copies of Microsoft's software. For the reasons that follow, we affirm.

¶ 2                                         BACKGROUND

¶ 3        On October 18, 2013, Erie filed a complaint for declaratory judgment, alleging that Compeve was the named insured on an insurance policy issued by Erie. Compeve and Packovskis, Compeve's owner, had been named in a lawsuit initiated by Microsoft in the United States District Court for the Northern District of Illinois, in which Microsoft alleged that Compeve installed counterfeit Microsoft software in the computers that it sells and that by selling the counterfeit software, Compeve infringed upon Microsoft's copyrights and trademarks. Erie sought a declaratory judgment that under the terms and conditions of the insurance policy, Erie had no obligation to defend or indemnify Compeve or Packovskis against any of the allegations in the Microsoft litigation.[1]

¶ 4        The Microsoft complaint, filed on September 16, 2013, alleged that Compeve and Packovskis "engaged in copyright and trademark infringement; false designation of origin[;] false description and representation; and unfair competition." Microsoft's complaint alleged that Compeve was engaged in the business of advertising, marketing, installing, offering, and distributing computer hardware and software, "including purported Microsoft software."

¶ 5        Paragraph 10 of Microsoft's complaint alleged that "[d]efendants advertised, marketed, installed, offered and distributed unauthorized copies of Microsoft software, infringing Microsoft's copyrights, trademarks and/or service mark." Paragraph 11 alleged that "On information and belief, Defendants advertise that the computers they sell come installed with Microsoft software, and in their advertisements, Defendants misappropriate and/or infringe Microsoft's copyrights, advertising ideas, style of doing business, slogans, trademarks and/or service mark."

¶ 6        Microsoft's complaint alleged that in March 2013, defendants sold a Microsoft investigator several computers with unauthorized copies of Windows XP installed. In June 2013, Microsoft asked defendants to cease and desist from making and distributing infringing copies of Microsoft software on computers. Nevertheless, in July 2013, defendants again sold a Microsoft investigator several computers with unauthorized copies of Windows XP installed. The complaint alleged that "[o]n information and belief, these are not isolated incidents. Rather, Defendants have been and continue to be involved in advertising, marketing, installing, offering, and/or distributing counterfeit and infringing copies of Microsoft's software and/or related components to unidentified persons or entities." Microsoft alleged that it "ha[d] been harmed by Defendants' activities, including their advertising activities and unauthorized use of Microsoft's copyright protected material."

---

[1]The record indicates that the lawsuit between Microsoft and defendants was resolved through an out-of-court settlement agreement in December 2013.

¶ 7        The first count of Microsoft's complaint, which is the only count relevant to the instant appeal, was for copyright infringement. The count incorporated the allegations as set forth above and alleged that "Defendants have infringed the copyrights in Microsoft's software, including but not limited to Microsoft Windows XP, by advertising, marketing, installing, offering, and/or distributing infringing materials in the United States of America without approval or authorization from Microsoft."[2]

¶ 8        The insurance policy at issue in the instant case was an "Ultrapack Plus" policy with a policy period of January 18, 2013, to January 18, 2014. The policy provided coverage for "personal and advertising injury," which was defined as:

> " 'Personal and advertising injury' means injury, including consequential 'bodily injury', arising out of one or more of the following offenses:
>
> * * *
>
> g. Infringing upon another's copyright, trade dress or slogan in your advertisement'."

"Advertisement" was further defined as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters."

¶ 9        The policy excluded coverage for, *inter alia*:

> "i. Infringement Of Copyright, Patent, Trademark Or Trade Secret
>
> 'Personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your 'advertisement'.
>
> However, this exclusion does not apply to infringement, in your 'advertisement', of copyright, trade dress or slogan."

¶ 10        On March 4, 2014, Erie filed a motion for summary judgment, claiming that it had no duty to defend defendants because the underlying complaint did not allege a covered "personal and advertising injury" claim. With respect to Microsoft's claim of copyright infringement, which is the only claim at issue in the instant appeal, Erie argued that the allegations in the complaint were not sufficient to trigger coverage for "personal and advertising injury" because there were only conclusory allegations that Compeve violated Microsoft's copyright in advertising and there were no allegations of a causal connection between Compeve's alleged advertisement and Microsoft's damages.

¶ 11        On March 12, 2014, defendants also filed a motion for summary judgment. Defendants pointed to several paragraphs in Microsoft's complaint alleging copyright infringement through advertising, including those quoted above. They claimed that the insurance policy provided coverage for such advertising injury and that Erie had breached its duty to defend.

¶ 12        On July 23, 2014, the parties came before the trial court for a hearing on their cross-motions for summary judgment. After hearing argument, the court found that the allegations of the Microsoft complaint did not bring any of its claims within or potentially

---

[2] Microsoft had a separate count concerning alleged trademark infringement of its name "Microsoft" and logo. However, that count is not at issue in the instant appeal, as defendants focus only on the copyright count.

within the insurance policy's coverage. With respect to the claim for copyright infringement, the court found that "there must be a causal connection between the Defendants' alleged advertising activity and Microsoft's alleged advertising injury and the allegations of the underlying complaint are insufficient to make that connection directly or potentially." Therefore, the court found that Erie had no duty to defend or indemnify defendants in the Microsoft action. Accordingly, the trial court granted Erie's motion for summary judgment and denied defendants' motion for summary judgment. This appeal follows.

¶ 13                                    ANALYSIS

¶ 14    On appeal, defendants argue that the trial court erred in granting summary judgment in Erie's favor because Erie had a duty to defend defendants in the Microsoft litigation. A trial court is permitted to grant summary judgment only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2008). The trial court must view these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We review a trial court's decision to grant a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). " 'The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment.' " *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 359 Ill. App. 3d 749, 755 (2005) (quoting *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993)).

¶ 15    "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp.*, 154 Ill. 2d at 102. However, "[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). A defendant moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The defendant may meet his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor or by establishing " 'that there is an absence of evidence to support the nonmoving party's case.' " *Nedzvekas*, 374 Ill. App. 3d at 624 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). In other words, there is no evidence to support the plaintiff's complaint.

¶ 16    " 'The purpose of summary judgment is not to try an issue of fact but *** to determine whether a triable issue of fact exists.' " *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002) (quoting *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)). However, "[w]hen, as in this case, parties file cross-motions for summary judgment, they concede the absence of a genuine issue of material fact and invite the court to decide the questions presented as a matter of law." *Steadfast Insurance*, 359 Ill. App. 3d at 755 (citing *Continental Casualty Co. v. Law Offices of Melvin James Kaplan*, 345 Ill. App. 3d 34, 37-38 (2003)). We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

- 4 -

¶ 17    In Illinois, the duties to defend and to indemnify are not coextensive, with the obligation to defend being broader than the obligation to pay. *International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.*, 168 Ill. App. 3d 361, 366 (1988). In determining whether an insurer has a duty to defend its insured, a court looks to the allegations in the underlying complaint and compares them to the relevant provisions of the insurance policy. *Outboard Marine Corp.*, 154 Ill. 2d at 107-08. "If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Outboard Marine Corp.*, 154 Ill. 2d at 108. However, if it is clear from the face of the complaint that the allegations fail to state facts that bring the case within, or potentially within, the policy's coverage, an insurer may properly refuse to defend. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991) (quoting *State Farm Fire & Casualty Co. v. Hatherley*, 250 Ill. App. 3d 333, 336 (1993)). "[W]here an exclusionary clause is relied upon to deny coverage, its applicability must be clear and free from doubt because any doubts as to coverage will be resolved in favor of the insured." *International Minerals & Chemical Corp.*, 168 Ill. App. 3d at 367. "[W]here the language of an insurance policy is clear and unambiguous, it will be applied as written." *Hatherley*, 250 Ill. App. 3d at 337. The construction of an insurance policy presents a question of law that is reviewed *de novo*. *Outboard Marine*, 154 Ill. 2d at 108. As noted, *de novo* consideration means we perform the same analysis that a trial judge would perform. *Khan*, 408 Ill. App. 3d at 578.

¶ 18    As an initial matter, the parties disagree as to which party has the burden of proving whether Erie had a duty to defend defendants. Our supreme court has "long established that the burden is on the insured to prove that its claim falls within the coverage of an insurance policy." *Addison Insurance Co. v. Fay*, 232 Ill. 2d 446, 453 (2009). "Once the insured has demonstrated coverage, the burden then shifts to the insurer to prove that a limitation or exclusion applies." *Addison*, 232 Ill. 2d at 453-54. Thus, defendants would bear the initial burden of proving coverage, but Erie would bear the burden of proving that the exclusion for "Infringement Of Copyright, Patent, Trademark Or Trade Secret" applies. In the case at bar, however, there was an exception to the exclusion, which operated to restore coverage, and it is this exception that is at issue. The question, then, is which party has the burden of proving whether or not this exception applies. Unsurprisingly, Erie argues that defendants have the burden of proving that the exception applies and coverage should be restored, while defendants argue that Erie has the burden of proving that the exception does not apply and the exclusion controls.

¶ 19    Neither the parties nor our research has revealed an Illinois court that has answered this question. However, the Seventh Circuit, applying Illinois law, has stated that while insurers have the burden of proving that an exclusion applies, "[i]nsureds, in turn, have the burden to prove that an exception to an exclusion restores coverage." *Santa's Best Craft, LLC v. St. Paul Fire & Marine Insurance Co.*, 611 F.3d 339, 347 (7th Cir. 2010). In making its statement, the Seventh Circuit relied on a treatise indicating that "[t]here is some uncertainty concerning the proper allocation of the burden of proof as to the applicability of an exception which, in effect, restores the coverage taken away by the exclusion. The trend clearly appears, however, to place the burden on insureds to prove that an exception to an exclusion applies to restore coverage." 17A Steven Plitt *et al.*, Couch on Insurance § 254:13 (3d ed. 2014).

¶ 20    In the case at bar, however, we have no need to resolve this question. Regardless of which party bears the burden, we are required to examine the allegations of the Microsoft complaint

in order to determine whether the facts alleged fall within, or potentially within, the policy's coverage. See *Outboard Marine Corp.*, 154 Ill. 2d at 107-08. As noted, this is a question of law that is reviewed *de novo*. *Outboard Marine*, 154 Ill. 2d at 108. Furthermore, even when the insurer bears the burden of proving that an exclusion applies, "where an exclusionary clause is relied upon to deny coverage, its applicability must be clear and free from doubt because any doubts as to coverage will be resolved in favor of the insured." *International Minerals & Chemical Corp.*, 168 Ill. App. 3d at 367. Thus, it makes no difference to our analysis whether Erie or defendants bear the burden of proof in the instant case. As such, we turn to the merits of the parties' arguments.

¶ 21    In the case at bar, the trial court granted Erie's motion for summary judgment, finding that "there must be a causal connection between the Defendants' alleged advertising activity and Microsoft's alleged advertising injury and the allegations of the underlying complaint are insufficient to make that connection directly or potentially." On appeal, defendants argue that Illinois law imposes a causal connection requirement only in patent cases, not in copyright cases as in the instant case. We do not find this argument persuasive.

¶ 22    Under Illinois law, there are three elements required to trigger advertising injury coverage: (1) Compeve "must have been engaged in advertising activity during the policy period when the injury occurred"; (2) Microsoft's allegations "must raise a potential for liability under one of the offenses listed in the policies"; and (3) "there must be a causal connection between the alleged injury and the advertising activity." *Lexmark International, Inc. v. Transportation Insurance Co.*, 327 Ill. App. 3d 128, 137 (2001); *Greenwich Insurance Co. v. RPS Products, Inc.*, 379 Ill. App. 3d 78, 86-87 (2008). It is only this last element that defendants challenge in the instant case.

¶ 23    Contrary to defendants' assertion, these elements are not found solely in patent infringement cases but have been applied to other intellectual property claims as well. For instance, the *Lexmark* court applied these elements in considering whether advertising injury coverage had been triggered for claims of " 'misappropriation of advertising ideas or style of doing business,' 'disparagement of [the underlying plaintiff's] goods, products, or services,' and 'infringement of slogan.' " *Lexmark*, 327 Ill. App. 3d at 138. Likewise, in *Greenwich*, we applied the elements to claims of unfair competition and trademark infringement in addition to considering the patent infringement claim. *Greenwich*, 379 Ill. App. 3d at 87. Thus, the trial court correctly found that there must be a causal connection between Microsoft's alleged injury and defendants' advertising activity.

¶ 24    Furthermore, we do not find persuasive defendants' argument that the policy language at issue does not require a causal connection, as was the case in other cases that imposed a causal connection requirement. The Erie policy defined "personal and advertising injury" as:

> "injury, including consequential 'bodily injury', arising out of one or more of the following offenses:
>
> * * *
>
>     g.    Infringing upon another's copyright, trade dress or slogan in your 'advertisement'."

Defendants acknowledge in their brief that "[t]he policy states that there has to be an infringement of the copyright in the advertisement" (emphasis omitted), but nevertheless argue that "there is nothing in the policy that requires a causal connection." They reach this result by

- 6 -

parsing the language of cases in which a causal connection has been required. Specifically, defendants quote the language of the insurance policy at issue in *International Insurance Co. v. Florists' Mutual Insurance Co.*, 201 Ill. App. 3d 428, 431 (1990), which provided that an advertising injury included " 'libel, slander, defamation; infringement of copyright, title or slogan; piracy, unfair competition, idea misappropriation or invasion of rights of privacy; which arise out of YOUR advertising activities.' " Defendants claim that "[a]s the policy is written in that case, the copyright infringement would have to arise out of the advertising activity and therefore, that [led] the court to interpret the policy as requiring a causal connection."

¶ 25    Defendants' citation of *International Insurance Co.* does nothing to explain why the policy language in that case leads to a different result than in this case. In both cases, the injury needs to be tied to the advertisement. Under the Erie policy, a "personal or advertising injury" is an injury arising out of infringing upon another's copyright "*in your 'advertisement'.*" (Emphasis added.) The express language of the policy requires that the injury must arise from copyright infringement that is contained in the advertisement in order for there to be an advertising injury. Thus, the policy's language requires a connection between the injury and the advertisement. The same connection between the injury and the advertisement is again set forth in the language of the exception that operates to restore coverage: "this exclusion does not apply to infringement, in your 'advertisement', of copyright, trade dress or slogan."

¶ 26    Moreover, *International Insurance Co.* is the only case defendants cite in their argument that the Erie policy uses language different than that interpreted by courts imposing a causal connection requirement. However, the Erie policy contains identical language to the insurance policy at issue in *Greenwich*, which, as noted, imposed a requirement of a causal connection between the alleged injury and the advertising activity. See *Greenwich*, 379 Ill. App. 3d at 83 (" ' "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses *** c. Infringing upon another's copyright, trade dress or slogan in your 'advertisement".' "). Thus, the trial court properly found that a causal connection between Microsoft's injury and Compeve's advertisement was required.

¶ 27    Defendants next argue that if we find that a causal connection was required, we should also find that such a connection was alleged in the Microsoft complaint. We do not find this argument persuasive. While Microsoft included allegations involving defendants' advertising, those allegations were conclusory. For instance, paragraph 10 of Microsoft's complaint alleged that "[d]efendants advertised, marketed, installed, offered and distributed unauthorized copies of Microsoft software, infringing Microsoft's copyrights, trademarks and/or service mark." Paragraph 11 alleged that "On information and belief, Defendants advertise that the computers they sell come installed with Microsoft software, and in their advertisements, Defendants misappropriate and/or infringe Microsoft's copyrights, advertising ideas, style of doing business, slogans, trademarks and/or service mark." In the count specifically concerning copyright infringement, Microsoft alleged that "Defendants have infringed the copyrights in Microsoft's software, including but not limited to Microsoft Windows XP, by advertising, marketing, installing, offering, and/or distributing infringing materials in the United States of America without approval or authorization from Microsoft." Microsoft also alleged that it "ha[d] been harmed by Defendants' activities, including their advertising activities and unauthorized use of Microsoft's copyright protected material."

¶ 28    The facts as alleged in the complaint do not establish any sort of connection between copyright infringement in the advertisement and Microsoft's alleged injury. They merely allege, in a conclusory fashion, that Microsoft was harmed by defendants' advertising activities. Indeed, as Erie points out, the complaint does not even allege any facts that a Compeve advertisement itself infringed on Microsoft's copyright, as is required for coverage under the insurance policy. Such allegations are not sufficient to demonstrate an advertising injury, and our state and federal courts have reached this conclusion several times.

¶ 29    For instance, in *Greenwich*, we considered whether an allegation of patent infringement fell within the insurance policy's definition of advertising injury which, as noted, is identical to that in the case at bar. We noted that "something more than the mere advertisement of an infringing product is required to bring such action within the scope of coverage. [Citations.] The advertisement must instruct or explain to the purchaser exactly how to recreate or reassemble the product into one that infringes a patent." *Greenwich*, 379 Ill. App. 3d at 86. We found that "[c]ount I of [the underlying] amended complaint (that RPS manufactured and sold allegedly infringing products) does not allege that RPS provided any detailed instructions to its customer on how to infringe the patent." *Greenwich*, 379 Ill. App. 3d at 86. Accordingly, we found the argument that the "act of advertising infringing products" fell within the definition of advertising injury to be unpersuasive. *Greenwich*, 379 Ill. App. 3d at 86. See also *Konami (America) Inc. v. Hartford Insurance Co. of Illinois*, 326 Ill. App. 3d 874, 880 (2002) (in the context of patent infringement claims, "something more is required for this type of infringement than the mere advertising of a product").

¶ 30    While defendants correctly point out that patent and copyright are different concepts, *Greenwich* is nevertheless instructive to our analysis in the instant case because it stands for the proposition that in order for there to be an advertising injury, "something more than the mere advertisement of an infringing product is required to bring such action within the scope of coverage." *Greenwich*, 379 Ill. App. 3d at 86. Furthermore, the Seventh Circuit has reached the same conclusion with respect to a claim of copyright infringement. In *Skylink Technologies, Inc. v. Assurance Co. of America*, 400 F.3d 982, 983 (7th Cir. 2005), Chamberlain, the maker of a garage door opener with "rolling code" technology, claimed that Skylink infringed Chamberlain's copyright by selling a transmitter and keypad that were "designed to get around" Chamberlain's technology. Specifically, Chamberlain alleged that Skylink " 'has made, imported, offered to the public, provided and otherwise trafficked in a Model 39 universal transmitter and a Model 89 keypad that *** (c) are marketed by Skylink for use in circumventing [Chamberlain's] technological measure' " in violation of section 1201(a) of the Copyright Act of 1976 (17 U.S.C. § 1201(a) (2000)). *Skylink*, 400 F.3d at 985. The Seventh Circuit found that the copyright infringement claim did not constitute an advertising injury under the insurance policy, noting:

    "[T]he real harm Chamberlain alleges results from the fact that the Skylink transmitter and keypad circumvent the rolling code technology, not from the way the products are packaged. Again, Chamberlain does not object to Skylink's marketing of its products except to the extent that they claim to use the rolling code technology. It is that failure to use the technology, not the advertisement, that caused the alleged injury." *Skylink*, 400 F.3d at 986.

¶ 31    The district court for the northern district of Illinois has also recently considered this issue and has reached the same conclusion. In *Lemko Corp. v. Federal Insurance Co.*, No. 12 C

03283, 2014 WL 4924403, at *8 (N.D. Ill. Sept. 30, 2014), the district court considered whether the underlying complaint by Motorola alleged an advertising injury based on copyright infringement. Interpreting the identical policy language as that present in the case at bar, the district court found that the underlying complaint did not allege that Lemko infringed Motorola's copyrights in any Lemko advertisement. *Lemko*, 2014 WL 4924403, at *9. The court noted:

> "It is true that the Motorola complaint asserts in general terms that Lemko used proprietary information it repurposed from Motorola in products that it marketed but that does not equate to 'advertising' within the meaning of the policy. Motorola's allegations pertain to the theft and use of the technology *in Lemko products*, not in any 'advertisement.' Advertising a product that, in turn, incorporates misappropriated or infringing content, is not the same as an advertisement that *itself* infringes a copyright by disclosing the copyrighted content." (Emphases in original.) *Lemko*, 2014 WL 4924403, at *9.

While both *Lemko* and *Skylink* are federal cases and, therefore, are not binding upon this court, we find their reasoning persuasive to the issues present in the instant case.

¶ 32    In the case at bar, Microsoft's complaint is aimed at the installation of unauthorized Microsoft products in Compeve's computers. The complaint does not allege that any copyrighted information was contained in a Compeve advertisement, nor does it allege, in more than conclusory fashion, that the contents of Compeve's advertisement harmed Microsoft. To establish copyright infringement, there must be copying. See, *e.g.*, *Incredible Technologies, Inc. v. Virtual Technologies, Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005) ("To establish copyright infringement, a plaintiff must prove '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.' " (quoting *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 361 (1991))). There is no allegation of any copying within the advertisement itself, only that Compeve advertised that it was selling Microsoft's products. As noted, "[a]dvertising a product that, in turn, incorporates misappropriated or infringing content, is not the same as an advertisement that *itself* infringes a copyright by disclosing the copyrighted content." (Emphasis in original.) *Lemko*, 2014 WL 4924403, at *9. Microsoft's complaint does not allege that Microsoft's copyright was infringed in Compeve's advertisement, nor does it allege any connection between Microsoft's injury and the copyright infringement in the advertisement. Accordingly, we cannot find that the trial court erred in granting summary judgment in Erie's favor.

¶ 33    As a final matter, we note that Erie raised a number of issues before the trial court as to other exclusions that it argued applied to the copyright infringement count, as well as to the other counts of the Microsoft complaint. However, defendants only argue the issues concerning the count for copyright infringement in their brief on appeal, noting that "if a duty to defend the copyright infringement allegation exists, Erie was under a duty to defend the entire complaint." While defendants claim in their reply brief that they "did not waive [their] right to contest additional grounds on which the Policy excludes coverage," it is well settled that points not argued on appeal are waived. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 253 (2010); Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) ("Points not argued [in the appellant's brief] are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). Accordingly, we do not consider any other bases for finding or

excluding coverage.

¶ 34                                  CONCLUSION

¶ 35      The trial court properly entered summary judgment in Erie's favor where the Microsoft complaint did not allege an "advertising injury" under the terms of the insurance policy.

¶ 36      Affirmed.