NOTICE
Decision filed 09/02/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 210001-U

NO. 5-21-0001

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of Marion County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-MR-48 |
| BRITTANY BIERMAN, Special Administrator of the Estate of Blake Edward Miller, Deceased, | ) ) ) ) | Honorable Mark W. Stedelin, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justice Welch concurred in the judgment.
Presiding Justice Boie specially concurred.

**ORDER**

¶ 1    *Held*: In a consolidated bench trial on competing complaints for declaratory relief, the trial court did not abuse its discretion with regard to the order of presentation of the claims or the scope and purpose of the witnesses' testimony. The trial court's finding that the decedent did not primarily reside with the named insured at the time of the accident was supported by the evidence and was not against the manifest weight of the evidence. The judgment is affirmed.

¶ 2    The plaintiff, State Farm Mutual Automobile Insurance Company (State Farm),

filed a complaint against the defendant, Brittany Bierman, special administrator of the

Estate of Blake Edward Miller, deceased (Bierman), seeking a judgment declaring that it

owed no coverage for injuries and damages sustained by decedent in a single-car accident involving an uninsured vehicle. State Farm alleged that there was no coverage under motor vehicle insurance policies issued to the decedent's former stepmother because the decedent was neither a named insured nor a resident relative of the named insured at the time of the accident. Bierman filed a counterclaim against State Farm. She sought a judgment declaring that the decedent was an insured because he resided primarily with his former stepmother at the time of the accident. Following a bench trial, the trial court entered a judgment in favor of State Farm and against Bierman. On appeal, Bierman claims the trial court erred in finding that the decedent did not reside primarily with his former stepmother at the time of the accident and, thus, that no coverage was afforded to the decedent's estate under the State Farm policies. We affirm.

¶ 3                                  I. BACKGROUND

¶ 4     On June 18, 2016, the decedent was seriously injured in a single-vehicle accident on Old Route 51, in Marion County, Illinois. On July 5, 2016, he died from those injuries. At the time of the accident, the decedent was a passenger in a vehicle driven by his cousin, Jared Simcox. Simcox owned the vehicle, but he did not have liability coverage on it.

¶ 5     On January 26, 2017, Bierman, acting on behalf of the decedent's estate, made a claim for uninsured motorist coverage and medical payments coverage under three State Farm motor vehicle policies issued to Winnie Robertson. Robertson was the decedent's former stepmother. Robertson married the decedent's biological father, David Miller, in 1993. The marriage was dissolved in 2003, and Miller died in 2009. The decedent was born

2

in 1986. Robertson was not his biological mother, and she never adopted him. The decedent was not a named insured on any of the State Farm policies issued to Robertson.

¶ 6    On April 10, 2017, State Farm brought this declaratory judgment action against Bierman, as the special administrator of the decedent's estate. In an amended complaint filed March 19, 2018, State Farm alleged that the decedent was a passenger in an uninsured vehicle that was involved in a one-car accident on June 18, 2016; that he suffered serious injuries as a result of the accident; and that he died from those injuries on July 5, 2016. State Farm further alleged that it issued three policies of insurance to Winnie Robertson; that the policies were in effect on June 18, 2016; and that the decedent's estate made a claim for medical payments and uninsured motorist coverage under those policies. State Farm asserted that the decedent was not an "insured" under Robertson's policies because he was not a named insured, or a "resident relative," as defined in the policies. State Farm further asserted that the decedent was not a "resident relative" because he was not related to Robertson "by blood, marriage, or adoption," and he did not "reside primarily" with Robertson at the time of the accident. State Farm claimed there was an actual controversy between the parties, and it sought a judgment declaring that the decedent's estate was not entitled to coverage under Robertson's policies for the accident of June 18, 2016.

¶ 7    State Farm appended certified copies of the subject policies to its amended complaint. In each of the policies, "*resident relative*" was defined as "a *person*, other than *you*, who resides primarily with the first *person* shown as a named insured on the Declarations Page and who is:

3

1. related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or

2. a ward or a foster child of that named insured, his or her spouse, or a *person* described in 1. above." (Emphases in original.)

¶ 8    On April 12, 2018, Bierman filed an answer to State Farm's amended complaint and a counterclaim for declaratory judgment. In the answer, Bierman denied State Farm's assertions that the decedent was not a "resident relative," as defined in the policies, and that there was no coverage for the estate's claim under Robertson's policies. In the counterclaim for declaratory judgment, Bierman alleged, in pertinent part, that the decedent was an insured under Robertson's policies because the decedent and Robertson were related by marriage and because the decedent resided with Robertson on and prior to the date of the accident. Bierman further alleged that State Farm had refused her demand to acknowledge coverage under Robertson's policies, and that there was a *bona fide* controversy regarding coverage. Bierman sought a judgment declaring that the decedent was a "resident relative" of Robertson, and that the decedent's estate was entitled to uninsured motorist coverage and medical payments coverage under Robertson's policies.

¶ 9    On April 16, 2018, State Farm filed an answer to Bierman's counterclaim for declaratory relief. State Farm admitted that Bierman made a demand for coverage, but denied the allegations that the decedent was a "resident relative" of Robertson and an insured under the subject policies.

¶ 10    In June 2018, the parties filed cross-motions for summary judgment. On August 7, 2018, the trial court entered a written order granting a summary judgment in favor of State Farm. The court concluded that while there was a genuine issue of material fact regarding the decedent's primary residence at the time of the accident, there was no such issue regarding the decedent's relationship with his former stepmother. The court found that the marriage between the decedent's father and Robertson had been dissolved in 2003, that the decedent's father died in 2009, and that the decedent and Robertson had not maintained a familial relationship thereafter. Based upon those facts, the trial court concluded that there was no relationship between the decedent and his stepmother, and that the decedent was not an insured under Robertson's policies. On appeal, this court found that the "related by marriage" provision in the State Farm policies was ambiguous, and therefore, should be construed against State Farm and in favor of coverage. *State Farm Mutual Automobile Insurance Co. v. Bierman*, 2019 IL App (5th) 180426, ¶ 27. This court also found that there was a genuine issue of material fact as to whether the decedent resided primarily with Robertson at the time of the accident. *Bierman*, 2019 IL App (5th) 180426, ¶ 27. The order granting summary judgment was reversed, and the case was remanded for further proceedings. *Bierman*, 2019 IL App (5th) 180426, ¶ 32.

¶ 11    On remand, the trial court consolidated State Farm's claim and Bierman's counterclaim for trial. A bench trial was held June 1, 2020. By that time, the main factual issue in dispute was whether the decedent resided primarily with the named insured, Robertson, at the time of the accident. State Farm, as plaintiff, claimed that the decedent

5

did not reside primarily with Robertson at the time of accident, and Bierman, as counterplaintiff, claimed that he did.

¶ 12    At the beginning of the trial, the court directed State Farm to proceed with its case. State Farm objected, and the following discussion was held:

"THE COURT: Now, State Farm is the plaintiff, so I'm assuming you proceed first?

MR. JOHNSON [State Farm's Counsel]: Actually, Your Honor, I don't believe that is accurate.

THE COURT: You are the plaintiff, but they have the burden of proof to demonstrate that this person was actually primarily residing with them?

MR. JOHNSON: That is exactly correct, Your Honor. Therefore, I have nothing to prove, so I'd have to prove a negative, and therefore they need to put their case on first to show that they can establish their prima facie case.

THE COURT: Mr. Terlizzi [Bierman's counsel], do you agree?

MR. TERLIZZI: No. If they don't want to put on any evidence, I guess that's their choice. I think the Fifth District opinion, which obviously is the law of this case, Your Honor, one of the things it states is the term resident generally is construed liberally in favor of the insured and strongly against the insurer. So if they don't want to put on any evidence and go against the presumption, which is the law of this case, that—you know, we'll put on our evidence I guess.

THE COURT: Back to you.

MR. JOHNSON: Your Honor, just because there is a presumption, that doesn't mean that they have met their burden. They still have the duty to show that coverage applies, regardless of what the situation is. The law of the land is very clear in every district that proving that someone falls under coverage, that falls under the terms of the policy, and therefore coverage applies is always the burden of the claimed insured. And as such, they have the burden and therefore they have to put on their evidence. I have no affirmative duty to prove anything.

THE COURT: Well, what I'm going to show then is that you are standing on your pleadings and resting at this point.

MR. JOHNSON: I'm asking for a ruling, Your Honor. I mean, if you are ordering me and finding that I have the burden that I must proceed first, then I'll do that over objection. But I just want to register my objection and make sure that the record is clear.

MR. TERLIZZI: I mean, they brought the lawsuit, Your Honor. They are the plaintiff, they are asking for relief. I mean, it's their choice whether they want to put on evidence or not. I don't think the Court can rule in advance.

THE COURT: I'm convinced that, or at least it's been suggested in their memorandum, that, Mr. Terlizzi, you have the burden of proving the residency issue at the time of the accident. You don't deny the existence of the policy, correct?

MR. TERLIZZI: We have admitted that.

7

THE COURT: And you don't deny that there was an accident and this individual died as a result of the injuries arising from that accident?

MR. TERLIZZI: Absolutely not. And I think the Fifth District found, which is the law of this case, that he was a relative for purposes of the policy.

THE COURT: Right. That was found by the Fifth District. So the two elements that we're looking at, residency and relation, relation has been resolved?

MR. TERLIZZI: I believe that's correct, Your Honor.

THE COURT: What I'm going to do is I'm going to show the plaintiff stands on the pleadings at this point. The existence of the policy is admitted. The terms of the policy are admitted. The date of the accident is admitted. The Court has previously found relationship.

MR. JOHNSON: Okay.

THE COURT: And that means I'm going to hear from Mr. Terlizzi first and you [Mr. Johnson] can call any rebuttal.

MR. JOHNSON: Fair enough."

¶ 13   Brittany Bierman testified as the first witness in the defendant/counterplaintiff's case-in-chief. Bierman introduced herself as the decedent's former girlfriend. During that relationship, she and the decedent had a daughter, who was then eight years old. Bierman testified that the decedent moved frequently during the last few of years of his life, noting that he lived in Centralia, Salem, Sandoval, and Junction City. Even with the frequent moves, the decedent remained actively involved in the life of their daughter and regularly

8

exercised visitation with her. Bierman recalled a time, shortly before Christmas in 2015, when the decedent planned to take their daughter to see Santa Claus during his visitation period. The decedent was living with Robertson at that time, so Bierman dropped the child off and picked her up at Robertson's home. Bierman estimated that between December 2015 and June 2016, she brought their daughter to Robertson's home to visit with the decedent about 75% of the time. She testified that the decedent had his own room at Robertson's home and kept his belongings there. Bierman opined that the decedent resided with Robertson during the period from December 2015 through June 2016. She acknowledged that he occasionally stayed with his sister during this period. On cross-examination, Bierman admitted she and the decedent did not have specific conversations about his living situation and his day-to-day life. She also admitted that her opinion that the decedent stayed at Robertson's home was based upon her observations when she dropped their daughter off at Robertson's home for visitation.

¶ 14    Winnie Robertson[1] was Bierman's next witness. Robertson testified that she and the decedent's father, David Miller, married in February 1993 and divorced in September 2003. After the divorce, Miller periodically stayed at Robertson's home until his death in 2009. Robertson recalled that the decedent was involved in a serious auto accident on June 18, 2016, and that he had been staying at her home intermittently around the time of the accident. Bierman's counsel then asked Robertson whether she remembered participating in a recorded interview with a State Farm agent on February 1, 2017. Robertson answered

---

[1]At some point prior to trial, Robertson had remarried and had taken the surname of Weemer. For consistency, we will continue to refer to her by the surname of Robertson.

in the affirmative. When asked whether Robertson told the State Farm agent that the decedent had been staying with her for five months, Robertson replied, "Yeah. Five months on and off." Robertson went on to explain that the State Farm agent had not asked whether the decedent stayed with her daily, and that during the five months prior to the accident, the decedent stayed with her on and off.

¶ 15    After Bierman finished questioning Robertson, State Farm sought, and was granted leave, to go beyond the scope of the direct examination and question Robertson about additional matters so that she would not need to be recalled later in the trial. Robertson testified that she lost contact with the decedent after his father's funeral in 2009. The two connected again in December 2015. The decedent contacted her and indicated he needed a place to stay, and she agreed to help him. At that time, Robertson lived in a two-bedroom trailer. Robertson's grandson stayed in the second bedroom, and he kept his possessions there. Robertson explained that there was only one bed in the second bedroom, so her grandson stayed at his father's home when the decedent stayed with her. Robertson testified that the decedent occasionally stayed at his sister's home during this period. She recalled that the decedent had a black duffel bag containing all of his possessions, and that he carried that bag with him everywhere. The decedent did not keep any of his belongings at her home when he was not there, and he did not receive mail at her home. Robertson also recalled that the decedent did not entertain friends and family members at her home. The decedent's friends and family members would come by her home to pick him up, but they did not come into the house.

¶ 16   Robertson testified that during the six-month period between December 2015 and June 2016, the decedent normally spent Friday nights with her. He usually stayed one other night during the week to do his laundry. Robertson stated that the decedent had visitation with his daughter "about every other weekend." On Friday evenings, Bierman would drop the child off at Robertson's home, and the decedent and his daughter would spend the night there. On Saturday and Sunday evenings, the decedent and his daughter stayed with the decedent's sister, Tana Simcox. If it was not a visitation weekend, the decedent usually stayed with his sister or one of his cousins. During the five months prior to his death, the decedent would stay at Robertson's home for a day or two, leave for a couple of days, and then return. Robertson had a discussion with the decedent regarding whether he could stay with her on a more permanent basis. She told the decedent that he was going to have to find a place to live, and that staying at her home more than one or two nights a week was not an option.

¶ 17   At the conclusion of Robertson's testimony, Bierman's counsel rested "with respect to our counterclaim." State Farm's counsel then called Tana Simcox "in rebuttal."

¶ 18   Tana Simcox was the decedent's half-sister. She described her relationship with the decedent as "super close" and more "best friends than siblings." Between December 2015 and June 2016, Simcox resided in Sandoval, Illinois. During that time, the decedent stayed with her "at least four nights a week." The other three nights, he stayed with Robertson or one of his cousins. Simcox testified that when the decedent stayed at her home, he sometimes brought his daughter with him. Simcox recalled that the decedent kept all of his possessions in a black duffel bag, and he took the bag with him wherever he was staying.

11

She stated that the decedent did not have one solitary address during the six months prior to the accident.

¶ 19    During cross-examination, Simcox acknowledged that she did not keep a record of which nights the decedent stayed with her and which nights he stayed with Robertson and others. She testified that prior to December 2015, the decedent resided with her seven nights a week. In December 2015, Simcox informed the decedent that if he was going to continue drinking, he could not stay with her. A few days later, she learned that the decedent began to stay at Robertson's home. She discovered this when the decedent asked her to pick him up there. During redirect, Simcox testified that the decedent primarily resided with her during the six months prior to his death. She acknowledged that he bounced around, but mainly stayed with her. When cross-examined again, Simcox testified that she knew Robertson, and believed that Robertson was an honest person, with no reason to lie when asked about when the decedent lived with her.

¶ 20    Following Simcox's testimony, State Farm rested. Bierman stated that she had no evidence in rebuttal. The court then invited the parties to give closing arguments and directed State Farm to proceed first. After closing arguments, the court took the case under advisement.

¶ 21    On June 12, 2020, the trial court issued a written order containing its findings of fact, analysis, and judgment. In the order, the trial court stated that it had directed Bierman to present her evidence first, based upon "the general proposition that the individual claiming coverage has the burden to prove that the individual was in fact covered." The court then noted that "case law reveals that the burden in this proceeding remains with the

12

plaintiff." The court then analyzed the evidence, placing the burden on State Farm to prove that the decedent did not reside with the insured at the time of the accident.

¶ 22   In its analysis, the court examined the evidence regarding the decedent's intent, along with his physical presence and the permanency of his presence at the home of the insured. The court found that the decedent usually spent up to four nights a week at his sister's residence, and never spent more than two nights a week at Robertson's residence. The court also found that the decedent did not have a room at Robertson's residence, did not leave any personal property at Robertson's residence, and did not receive mail at Robertson's residence. The court further found that the decedent only stayed with Robertson in order to visit with his minor child and do his laundry, and that he did not intend to make Robertson's home his primary residence. Based upon those findings, the court concluded that "the insured's abode was not the decedent's primary residence," and therefore, the decedent was not an insured under the State Farm policies issued to Robertson. The court entered a judgment in favor of State Farm and against Bierman, and granted the relief sought in State Farm's amended complaint.

¶ 23   In a posttrial motion filed July 6, 2020, Bierman claimed that the trial court's findings were against the manifest weight of the evidence. Bierman argued that the trial court correctly determined that State Farm had the burden to prove the decedent did not primarily reside with its insured at the time of the accident, but then erred in considering the "rebuttal" testimony offered by State Farm to satisfy its burden of proof. Bierman reasoned that State Farm should not be permitted to present "rebuttal testimony" to prove its case where it failed to present any evidence in its case-in-chief, and instead elected to

rest on its pleadings. Bierman also asserted she presented sufficient evidence to demonstrate that the decedent had been residing primarily with Robertson at the time of the accident.

¶ 24   In an order entered December 4, 2020,[2] the trial court denied Bierman's posttrial motion. The court restated its finding that the decedent did not reside primarily with Robertson at the time of the accident. The court noted that the controlling factor in determining the decedent's primary place of residence was the decedent's intent, and not the intent of Simcox, Robertson, or others. The court reiterated that as it analyzed the testimony, it placed the burden on State Farm to prove that the decedent did not reside with the insured at the time of the accident. The court also addressed Bierman's contention that the court had improperly considered the "rebuttal evidence" presented by State Farm as direct evidence. The court indicated that while both parties characterized the testimony offered by State Farm as "rebuttal evidence," the court treated it as direct testimony after finding that State Farm had the burden of proof. The court further found that Bierman had ample opportunity to challenge the evidence during the trial.

¶ 25                                 II. ANALYSIS

¶ 26   On appeal, Bierman contends that the trial court erred in finding that the decedent did not primarily reside with Robertson on the date of the accident, and thus, that no coverage was afforded to the decedent's estate under the State Farm policies issued to Robertson. Bierman claims that the trial court correctly determined that State Farm had the

---

[2]The trial court's written order denying Bierman's posttrial motion was filed-stamped December 4, 2020, but contains a handwritten date of "9/4/20."

14

burden to prove the decedent did not primarily reside with its insured at the time of the accident, but then erred in considering the "rebuttal" testimony offered by State Farm to satisfy its burden of proof. She argues that State Farm should not have been allowed to present "rebuttal testimony" to prove its case where it failed to present any evidence in its case-in-chief, and instead elected to rest on its pleadings. Bierman also claims that the trial court's findings were against the manifest weight of the evidence because the evidence she presented overwhelmingly demonstrated that the decedent's primary residence on June 18, 2016, was with Robertson.

¶ 27    In response, State Farm argues that the disputed issue was one of coverage, rather than an exclusion or limitation of coverage, and that Illinois courts have consistently held that the claimant has the burden to prove that a claim comes within the policy's coverage. State Farm also argues that the trial court's findings were supported by the testimony and were not against the manifest weight of the evidence.

¶ 28    The central purpose of declaratory relief is to allow a court to address a controversy after a dispute has arisen, but before steps are taken that would give rise to a claim for damages or other relief. *Beahringer v. Page*, 204 Ill. 2d 363, 372-73 (2003). The declaratory judgment statute does not create substantive rights or duties, but merely offers "a new, additional, and cumulative procedural method for the judicial determination of the parties' rights." *Beahringer*, 204 Ill. 2d at 373. The essential requirements of a declaratory judgment action are: (1) a plaintiff with a tangible legal interest, (2) a defendant having an opposing interest, and (3) an actual controversy between the parties concerning those

15

interests. *Beahringer*, 204 Ill. 2d at 372. Therefore, a party seeking declaratory relief must demonstrate the existence of an actual controversy and a basis for its right to relief.

¶ 29    Generally, the burden of proof in a civil proceeding, including one for declaratory relief, rests on the party requesting relief. *Knoob Enterprises, Inc. v. Village of Colp*, 358 Ill. App. 3d 832, 838 (2005); *Farmers Automobile Insurance Ass'n v. Gitelson*, 344 Ill. App. 3d 888, 896 (2003) (citing *People v. Orth*, 124 Ill. 2d 326, 337-38 (1988)); *Board of Trade of the City of Chicago v. Dow Jones & Co.*, 98 Ill. 2d 109, 115-16 (1983). Under the declaratory judgment statute, when a declaratory judgment proceeding "involves the determination of issues of fact triable by a jury, they shall be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending." 735 ILCS 5/2-701(d) (West 2016). Thus, the rules of civil procedure apply in declaratory judgment actions, such as the case at bar, just as in any other civil proceeding.[3] Ordinarily, the party alleging a fact will have the burden of producing evidence to show the existence of that fact. As noted, a declaratory judgment action does not alter substantive aspects of a claim. Under the tenets of Illinois insurance law, the insured generally bears the burden to prove that a claim falls within the terms of the insurance policy. *Addison Insurance Co. v. Fay*, 232 Ill. 2d 446, 453 (2009) (citing *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 204 (1991)). This tenet is based upon the concept that typically, the insured has greater knowledge of and access to relevant facts surrounding the claimed loss. See generally

---

[3]The statement in the special concurrence that the procedural posture in an insurance declaratory judgment action "is irrelevant" (*infra* ¶ 51) ignores the Illinois Code of Civil Procedure and Illinois Supreme Court Rules.

16

*Waste Management, Inc.*, 144 Ill. 2d at 204. Once the insured has demonstrated coverage, the burden shifts to the insurer to prove that a limitation or exclusion applies. *Addison Insurance Co.*, 232 Ill. 2d at 453-54.

¶ 30     State Farm's complaint for declaratory relief and Bierman's counterclaim for declaratory relief were consolidated for trial. By the time of trial, the main factual issue in dispute was whether the decedent resided primarily with the named insured at the time of the accident. State Farm, as plaintiff, alleged that the decedent did not reside primarily with Robertson at the time of the accident. Bierman, as counterplaintiff, alleged that he did. These are flip sides of the same issue. The trial court initially directed State Farm to proceed with its case. State Farm objected. After some discussion, the court concluded that Bierman bore the burden of proving that coverage applied. State Farm, then, elected to stand on its pleadings, having demonstrated a tangible legal interest, the existence of an actual controversy between the parties, and a basis for its right to relief. The trial court directed Bierman, as counterplaintiff, to present her evidence in support of her allegation that the decedent resided primarily with the insured at the time of the accident. Bierman presented her witnesses and State Farm had an opportunity to cross-examine them. State Farm, then, presented its own witnesses in its defense against the counterclaim and in support of its complaint.

¶ 31     Generally, the parties proceed at all stages of the trial in the order in which they appear in the pleadings unless otherwise agreed by the parties. See Ill. S. Ct. R. 233 (eff. July 1, 1975). However, in a consolidated proceeding, such as the present case, a trial court has the authority to designate the order in which the parties proceed with the presentation

17

of evidence and witnesses. Ill. S. Ct. R. 233 (eff. July 1, 1975). A trial court also has authority to exercise "reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Ill. R. Evid. 611(a) (eff. Oct. 15, 2015). Additionally, the trial court has discretion to permit a party cross-examining a witness to inquire into additional matters as if on direct examination. Ill. R. Evid. 611(b) (eff. Oct. 15, 2015).

¶ 32    Given the competing claims for declaratory relief, it was within the discretion of the trial court to determine whether the plaintiff or the counterplaintiff should proceed first. The trial court did not abuse its discretion in directing Bierman to present her evidence first. By that point, State Farm, as plaintiff, had established the existence of an actual controversy between the parties and the nature of the controversy, as well as a basis for the right to relief. Nor did the court abuse its discretion in considering the testimony of State Farm's witnesses as evidence in its defense against Bierman's counterclaim, and in support of its case-in-chief. The plaintiff's attempt to paint the testimony of State Farm's witnesses as mere "rebuttal" evidence does not comport with the order of proof designated by the trial court.

¶ 33    As noted above, we acknowledge that under the general tenets of insurance law, the insured bears the burden of establishing that a claim falls within the terms of the insurance coverage. This is because the insured typically has greater knowledge of and access to relevant facts surrounding the claim. *Waste Management, Inc.*, 144 Ill. 2d at 204. But this

18

case does not involve a dispute between the insurer, State Farm, and the named insured, Robertson. This case is unusual because the named insured was not making a claim for coverage. State Farm and Robertson were not adversaries, and their interests were arguably aligned. By all accounts, Robertson cooperated with State Farm and gave a statement to its adjuster. Robertson had direct knowledge and access to relevant facts regarding whether the decedent resided primarily at her home at the time of the accident. State Farm had at least equal access to relevant evidence regarding the disputed factual issue. This was not a case where Bierman's access to relevant facts regarding the claim was greater than State Farm's access. Thus, the rationale for placing the burden on the party seeking coverage to prove coverage was not wholly applicable under the facts and circumstances of this case. Nevertheless, the trial court directed Bierman to present her evidence that the decedent resided primarily with Robertson, as alleged in her counterclaim for declaratory relief, and then directed State Farm to present evidence in its defense against the counterclaim and in support of its complaint for declaratory relief.

¶ 34    In the judgment order of June 12, 2020, and the subsequent ruling on Bierman's posttrial motion, the trial court indicated that it had mistakenly found that it was Bierman's burden to prove that the decedent primarily resided with Robertson, relying on the general principle that the individual claiming coverage has the burden to prove that the loss falls within the coverage. After reviewing case law,[4] the court concluded that the burden of

---

[4]In its order, the trial court referenced *Farmers Automobile Insurance Ass'n v. Gitelson*, 344 Ill. App. 3d 888 (2003), for the proposition that the burden of proof in a declaratory judgment action was on the party seeking relief. We note that *Gitelson* did not involve a consolidated trial on competing claims for declaratory relief, and therefore, it is procedurally distinguishable. That said, reviewing courts, including our court, have often cited *Gitelson* for the general principle that the plaintiff in a declaratory judgment action bears the burden of proof. See, *e.g.*, *Empire*

proof in this proceeding remained with State Farm, and therefore placed the burden of proof on State Farm as it analyzed the evidence. In reaching this conclusion, the trial court apparently lost sight of the procedural posture of the proceedings before it, namely that State Farm's claim for declaratory relief and Bierman's counterclaim for declaratory relief had been consolidated for trial, that testimony had been presented on both the claim and the counterclaim, and that State Farm and Bierman each carried a burden to present evidence to prove their respective claims. The trial court did not identify or otherwise discuss Bierman's burden of proof as to her counterclaim. Nor did the parties. The record shows that despite these failures to clearly delineate the parties' respective burdens of proof, the trial court ultimately considered the weight and credibility of the testimony given by each party's witnesses as it assessed the issue of the decedent's residency.

¶ 35    In the special concurrence, our colleague has expressed his view that "the lower courts should follow the well-established tenets for burdens of proof in an insurance action regardless of whether the party is a plaintiff, defendant, counterplaintiff, or counterdefendant." *Infra* ¶ 55. We find it unnecessary, in deciding the case at bar, to discuss such an overly broad statement regarding the burden of proof in *all* insurance cases filed under the declaratory judgment statute. The applicable rules of procedure and the case law addressing the burden of proof in declaratory judgment actions have been set forth above. When the nature of the actual controversy and the relationships of the parties to that controversy have been established by the plaintiff, our trial courts have had little difficulty

---

*Indemnity Insurance Co. v. Chicago Province of the Society of Jesus*, 2013 IL App (1st) 112346; *Knoob Enterprises, Inc.*, 358 Ill. App. 3d at 838.

20

sorting out where the burden of proof on a particular issue rests. There are many reported cases involving insurance coverage disputes that illustrate the general rule that the party who requests the judicial relief in a civil action ordinarily has the burden of proof, while also applying the general tenets of insurance law. See, *e.g.*, *Pekin Insurance Co. v. L.J. Shaw & Co.*, 291 Ill. App. 3d 888 (1997) (insurer who filed declaratory judgment action was required to show that an exclusion in the policy precluded coverage); *State Farm Fire & Casualty Co. v. Leverton*, 314 Ill. App. 3d 1080 (2000) (insurer who brought the declaratory judgment action had the initial burden to show that intentional acts exclusion applied); *Muller v. Firemen's Fund Insurance Co.*, 289 Ill. App. 3d 719 (1997) (insured filed declaratory judgment action and bore the initial burden to establish that her claim came within the terms of the coverage in a case involving a "hit and run" vehicle); *Village of Hoffman Estates v. Cincinnati Insurance Co.*, 283 Ill. App. 3d 1011 (1996) (municipal landowner brought the action against the insurer and bore the initial burden to show that it was an additional insured under a policy issued to its general contractor). The tenets of insurance law do not displace, or render irrelevant, the rules of civil procedure or the supreme court rules.

¶ 36    Bierman also contends the trial court's finding that the decedent did not primarily reside with Robertson at the time of the accident was against the manifest weight of the evidence. She claims that evidence she presented overwhelmingly demonstrated that the decedent's primary residence was with Robertson at the time of the accident. Bierman points out that in an interview with a State Farm adjuster, and in sworn testimony, Robertson stated that the decedent resided with her around the time of the accident.

21

Bierman also points to her own testimony, in which she stated that she routinely dropped off her daughter for visitation with the decedent at Robertson's residence. She also claims that the trial court failed to consider the decedent's intent when considering the issue of his primary residence.

¶ 37    In a bench trial, the trial court has the obligation to weigh the evidence and make findings of fact. *Eychaner v. Gross*, 202 Ill. 2d 228, 251 (2002); *Kalata v. Anheuser-Busch Cos.*, 144 Ill. 2d 425, 433 (1991). In a close case, where the findings of fact must be determined from the credibility of the witnesses, a reviewing court will defer to the trial court's factual findings unless those finding are against the manifest weight of the evidence. *Kalata*, 144 Ill. 2d at 433. A decision is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence. *Eychaner*, 202 Ill. 2d at 252. Under this standard, the reviewing court will give great deference to the trial court's findings of fact and credibility determinations. *Eychaner*, 202 Ill. 2d at 270. A reviewing court will not substitute its judgment for that of the trial court, especially where the testimony is contradictory, because the trial court, as the trier of fact, is in the best position to evaluate the demeanor and credibility of the witnesses, and to determine the weight to be given their testimony. *Eychaner*, 202 Ill. 2d at 270-71.

¶ 38    In determining whether a person is a resident of a household, courts have conducted a case-specific analysis of a person's "intent, physical presence, and permanency of abode." *Coriasco v. Hutchcraft*, 245 Ill. App. 3d 969, 970-71 (1993). The controlling factor is intent as evinced by the acts of the person whose residency is in question. *Gitelson*, 344

22

Ill. App. 3d at 894; *Farmers Automobile Insurance Ass'n v. Williams*, 321 Ill. App. 3d 310, 314 (2001). If a person's absence from a residence is intended to be temporary, it does not constitute an abandonment of the residence. *Williams*, 321 Ill. App. 3d at 314. And while a person may have more than one residence, a person generally cannot reside primarily in more than one place at the same time. See *Gaudina v. State Farm Mutual Automobile Insurance Co.*, 2014 IL App (1st) 131264, ¶ 28; but see *Coriasco*, 245 Ill. App. 3d at 972 (minor child of divorced parents had two residences for purposes of coverage as each parent's home had an element of permanency insofar as the minor's visits were governed by a court-ordered schedule).

¶ 39    In this case, the main factual issue in dispute was whether the decedent, then an adult, primarily resided with Robertson at the time of the accident. At trial, three witnesses presented testimony on this point. Robertson testified that during the six-month period prior to the decedent's death, the decedent stayed at her home intermittently—no more than two nights a week. Robertson also testified that she told the decedent that he could not stay more than one or two nights a week or on a permanent basis because her grandson lived with her and occupied the only other bedroom in her home. Simcox testified that she informed the decedent that he could not stay with her if he was drinking. But she also indicated that she relented because he was her brother. Simcox testified that during the period in question, the decedent stayed with her four nights a week and that he bounced around between Robertson's home and his cousins' homes the other three days of the week. Bierman testified that the decedent primarily resided with Robertson during the six-month period prior to his death. Bierman acknowledged that her opinion was based upon what she

23

observed every other weekend, when she dropped her daughter off at Robertson's home to visit with the decedent. She further acknowledged that she and the decedent did not discuss his living situation during the six months before he died.

¶ 40    In the written judgment, and the order denying Bierman's posttrial motion, the trial court specifically stated that it considered the testimony as to the decedent's intent, rather than the intent of Simcox, Robertson, or others. The court noted that the best indicator of the decedent's intent regarding his residency was "not necessarily what he did as much as what he didn't do." The court found that the decedent never spent more than two nights a week at Robertson's home; that he did not have his own room at Robertson's home; and that he did not leave any of his belongings at Robertson's home. The court also found that the decedent did not receive mail at Robertson's home, and that he did not have visitors there, other than his daughter. After considering the testimony of the witnesses, the court found that the decedent did not reside primarily with Robertson at the time of the accident. The court's findings were supported by the evidence and were not against the manifest weight of the evidence.

¶ 41                                  III. CONCLUSION

¶ 42    This case involved competing complaints for declaratory relief that were tried in a consolidated bench trial. The trial court did not abuse its discretion in regard to the order of the presentation of the claims or the scope and purpose of the witnesses' testimony. Although the court did not clearly delineate the parties' respective burdens of proof in this consolidated proceeding, the court ultimately considered each party's witnesses and made factual findings based upon an assessment of weight and credibility of the testimony. The

trial court's finding that the decedent did not primarily reside with the named insured at the time of the accident was supported by the evidence and was not against the manifest weight of the evidence. Accordingly, the judgment of the circuit court is affirmed.

¶ 43   Affirmed.

¶ 44   PRESIDING JUSITCE BOIE, specially concurring:

¶ 45   I agree that the trial court's finding that the decedent was not an insured under the policies at issue was not against the manifest weight of the evidence and that the judgment should be affirmed. I write separately, however, because I believe that the majority fails to address the trial court's findings regarding its assignment of the burden of proof and the reason that the trial court shifted the burden of proof from Bierman to State Farm.

¶ 46   The majority focuses on the procedural proceedings and states that the trial court directed the defendant, as counterplaintiff, to present her evidence first. The trial court's written order, however, specifically stated that:

> "At the trial, the court directed Defendant to present evidence first, relying on the general proposition that the individual claiming coverage has the burden of proving that the individual was in fact covered. However, case law reveals that the burden in this proceeding remains with the plaintiff, so the evidence will be so analyzed. *Farmers Automobile Insurance Association v. Gitelson*, 344 Ill. App. 3d 888 (1st Dist., 2003)."

¶ 47   As such, the trial court's order makes it clear that it assigned the burden of proof at trial to the "Defendant" consistent with the tenet that in an insurance action, the burden rests with the party asserting coverage to prove that their claim falls within the coverage of

the policy. *Addison Insurance Co. v. Fay*, 232 Ill. 2d 446, 453 (2009); *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 204 (1991). The trial court then shifted the burden of proof to State Farm as the "plaintiff" based on "case law," citing *Farmers Automobile Insurance Ass'n v. Gitelson*, 344 Ill. App. 3d 888 (2003).

¶ 48    In *Gitelson*, an insurer sought a declaratory judgment that the insured's adult child was not a resident of the insured's household and therefore, not entitled to underinsured motorist benefits under the insured's policy. *Id.* at 890. At trial, the insurer was required to bear the burden of proof and on appeal, the insurer argued that the assignment of the burden of proof was in error. *Id.* at 891. In its analysis, the *Gitelson* court acknowledged the long-standing tenets of the burden of proof in insurance matters, stating that:

> "We are aware of two well-established tenets of insurance law: the insurer bears the burden of establishing that a claim falls within a provision that limits or excludes coverage; and the insured bears the burden to show that a claim falls within a policy." *Id.* at 896.

¶ 49    The *Gitelson* court, however, went on to note that the burden of proof in a civil proceeding generally rested on the party requesting relief and that "the insurer bore the burden when it was the plaintiff (see, *e.g.*, *Pekin Insurance Co. v. L.J. Shaw & Co.*, 291 Ill. App. 3d 888, 664 N.E.2d 853 (1997); *State Farm Fire & Casualty Co. v. Leverton*, 314 Ill. App. 3d 1080, 732 N.E.2d 1094 (2000)), while the insured bore the burden when he was the plaintiff (see, *e.g.*, *Village of Hoffman Estates v. Cincinnati Insurance Co.*, 283 Ill. App. 3d 1011, 670 N.E.2d 874 (1996); *Muller v. Fireman's Fund Insurance Co.*, 289 Ill.App.3d 719, 682 N.E.2d 331 (1997))." *Id.* As such, the *Gitelson* court found that the burden of

26

proof was properly imposed on the insurer since it was "consistent with the general proposition set out above that the plaintiff in a declaratory judgment action bears the burden of proof." *Id.*

¶ 50    While I agree with the *Gitelson* court, and with the majority, that the burden of proof in a civil proceeding generally rests on the party requesting relief, the determinative factor in the assignment of the burden of proof in an insurance matter is whether a court is dealing with an issue of coverage or an issue that excludes or limits coverage. See *Addison Insurance Co. v. Fay*, 232 Ill. 2d 446, 453-54 (2009); *Wells v. State Farm Fire & Casualty Insurance Co.*, 2021 IL App (5th) 190460, ¶ 29; *Erie Insurance Exchange v. Compeve Corp.*, 2015 IL App (1st) 142508, ¶ 18; *Stoneridge Development Co. v. Essex Insurance Co.*, 382 Ill. App. 3d 731, 749 (2008); *Fidelity & Casualty Co. v. Sittig*, 181 Ill. 111, 113 (1899). In its analysis, the *Gitelson* court did not address whether the lower court was dealing with an issue of coverage or one that excluded or limited coverage.

¶ 51    With all due consideration of the holding in *Gitelson*, I do not believe that the burden of proof always rests upon the party that files an insurance declaratory action. I also disagree with the majority decision that the trial court "apparently lost sight of the procedural posture of the proceedings before it" (*supra* ¶ 34). The procedural posture, and whether the party is a plaintiff, defendant, counterplaintiff, or counterdefendant in the insurance declaratory action, is irrelevant. The majority cites to, *inter alia*, a supreme court rule, a rule of civil procedure, and a rule of evidence. If even one of those rules had been relied upon by the lower court to shift the burden of proof, I would have concurred with the majority decision without separately writing. Those rules, however, are not what the

27

lower court relied upon in making its ruling. Further, an assignment of the burden of proof consistent with the tenet of insurance law would in no way displace or render irrelevant, the rules of civil procedure or the supreme court rules. The issue being addressed is the burden of proof, not the order of the proceedings or the lower court's authority to exercise reasonable control.

¶ 52     Further, the majority cites to cases[5] that "illustrate the general rule that the party who requests the judicial relief in a civil action ordinarily has the burden of proof, while also applying the general tenets of insurance law." *Supra* ¶ 35. There is no discussion within any of these matters concerning which party requested the judicial relief in relationship to the burden of proof. Each of these cases followed the general tenets of insurance law wherein the insurer had the burden of proving an exclusion (*Pekin Insurance Co. v. L.J. Shaw & Co.*, 291 Ill. App. 3d 888 (1997); *State Farm Fire & Casualty Co. v. Leverton*, 314 Ill. App. 3d 1080 (2000)) and the insured had the burden of proving coverage (*Muller v. Firemen's Fund Insurance Co.*, 289 Ill. App. 3d 719 (1997); *Hoffman Estates v. Cincinnati Insurance Co.*, 283 Ill. App. 3d 1011 (1996)).

¶ 53     The parties' pleadings and arguments in this matter consistently focused on whether the decedent was an "insured" and therefore, covered under Robertson's State Farm

---

[5]"*Pekin Insurance Co. v. L.J. Shaw & Co.*, 291 Ill. App. 3d 888 (1997) (insurer who filed declaratory judgment action was required to show that an exclusion in the policy precluded coverage); *State Farm Fire & Casualty Co. v. Leverton*, 314 Ill. App. 3d 1080 (2000) (insurer who brought the declaratory judgment action had the initial burden to show that intentional acts exclusion applied); *Muller v. Firemen's Fund Insurance Co.*, 289 Ill. App. 3d 719 (1997) (insured filed declaratory judgment action and bore the initial burden to establish that her claim came within the terms of the coverage in a case involving a 'hit and run' vehicle); *Village of Hoffman Estates v. Cincinnati Insurance Co.*, 283 Ill. App. 3d 1011 (1996) (municipal landowner brought the action against the insurer and bore the initial burden to show that it was an additional insured under a policy issued to its general contractor)." *Supra* ¶ 35.

policies. In order for a claimant to demonstrate that his or her loss falls within the coverage of an insurance policy, that person's burden necessarily includes the burden of proving that he or she qualifies as an insured as that term is defined in the policy. In this matter, neither party argued, nor does the record demonstrate, that any exclusions or exceptions to Robertson's policies applied. There is also no indication within the pleadings or the record on appeal to indicate that State Farm ever asserted an exception or limitation of the policies. The parties' controversy centered on whether the decedent was an insured covered under Robertson's policies and therefore, the only issue before the trial court was an issue of coverage.

¶ 54    In an insurance action, it has long been held that the burden rests with the insured to prove that their claim falls within the coverage of its policy. *Addison*, 232 Ill. 2d at 453; *Waste Management, Inc.*, 144 Ill. 2d at 204. Once the insured has demonstrated coverage, the burden shifts to the insurer to prove that a limitation or exclusion applies. *Addison*, 232 Ill. 2d at 453-54; *Erie Insurance Exchange*, 2015 IL App (1st) 142508, ¶ 18; *Stoneridge Development Co.*, 382 Ill. App. at 749; *Fidelity & Casualty Co.*, 181 Ill. at 113. Finally, the burden shifts back to the insured to prove that an exception to a limitation or an exclusion applies. *Wells*, 2021 IL App (5th) 190460, ¶ 29.

¶ 55    Therefore, if the issue is one of coverage, as it is in this matter, then the party alleging coverage has the burden of proof regardless of whether that party is a plaintiff, defendant, counterplaintiff, or counterdefendant. I believe that the trial court correctly assigned the burden of proof at trial based on Bierman's assertion of coverage and further believe that the trial court erred in shifting the burden of proof to State Farm based on the

29

holding in *Gitelson*. As the *Gitelson* court did, the majority in this matter does not focus on whether the issue before the trial court was one of coverage, limitation or exclusion, or an exception to a limitation or exclusion, but instead focuses on the procedural posture of the proceedings. As such, I write this special concurrence to address the trial court's reliance on *Gitelson*, and to convey my belief that the lower courts should follow the well-established tenets for the burden of proof in an insurance action regardless of whether the party is a plaintiff, defendant, counterplaintiff, or counterdefendant. I further do so to alleviate any confusion regarding the burden of proof and to avoid this type of issue within the lower courts.

¶ 56   For the reasons stated above, I specially concur with the majority's holding that the trial court's finding that the decedent did not primarily reside with Robertson on the date of the accident was not against the manifest weight of the evidence, and that the judgment of the circuit court should be affirmed.